Nathan Brown (SBN 033482)
BROWN PATENT LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
Email: Nathan.Brown@BrownPatentLaw.com

*Attorney for Plaintiff and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darren Macdonald, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>Go Big, LLC, an Arizona company,<br><br>*Defendant.* | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## **CLASS ACTION COMPLAINT**

This case addresses a disturbing trend whereby real estate brokerages train real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Darren Macdonald ("Plaintiff Macdonald" or "Macdonald") brings this Class Action Complaint and Demand for Jury Trial against Defendant Go Big, LLC, ("Defendant" or "KW Arizona Realty") to stop the Defendant from violating the TCPA by training its agents to place telemarketing calls and text messages to consumers without consent including calls

and text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Macdonald, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Macdonald is a resident of Scottsdale, Arizona.

2. Defendant KW Arizona Realty is a company registered in Arizona, with its headquarters located in Scottsdale, Arizona. Defendant KW Arizona Realty conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

4. This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District and into this District where the Plaintiff resides.

2

# INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in April 2025 alone, at a rate of 165.0 million per day. www.robocallindex.com (last visited May 15, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Defendant KW Arizona Realty is a real estate brokerage that works with consumers who want to buy or sell real estate who will pay agents a commission for their services.[3]

14. KW Arizona Realty agents share their commissions with KW Arizona Realty, who generates revenue from each real estate transaction.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://kwarizona.com/about-us/

4

15. KW Arizona Realty has a vested interest in the success of its real estate agents, as those agents generate revenue for the company.

### KW ARIZONA REALTY DIRECTS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS

16. KW Arizona Realty provides training, coaching, mentorship and ongoing education to its real estate agents.[5]

17. KW Arizona Realty directs its real estate agents to generate business through placing cold calls to consumers.

18. KW Arizona Realty posted an article on its Facebook page identifying 5 cold calling tips from its top agents:

---

[4] https://kwarizona.com/careers/agent-opportunity-pathway/
[5] Id.

5



19. The above post links to a page on the KW Arizona Realty website where the 5 cold calling tips are explained in detail.

20. The website states that KW Arizona Realty hosts "Calling Nights" that are offered as part of its coaching program where agents learn cold calling tips:

---

[6] https://www.facebook.com/profile/100063755239828/search/?q=cold%20call

6

> **Keller Williams Arizona Realty: Where You Can Find Success**
>
> Keller Williams Arizona Realty provides a number of resources you can use to improve your real estate business. Calling Nights offered through the Coaching Program provide a great venue for agents to work together. Agents can learn and practice cold calling tips in a fun and supportive atmosphere. Many agents in the market center welcome talking about their approach and what works for them. The KWAZ market center truly exhibits the Keller Williams Belief System with the belief that success results through people.
>
> Contact us today to learn more about how to increase your success by using our cold calling tips. The KWAZ leadership team and coaching experts are always glad to speak about the many educational and career opportunities available to agents at our brokerage. We believe you will agree that Keller Williams Arizona Realty is the best Scottsdale real estate brokerage.[7]

21. As per the above, KW Arizona Realty asks new agents to contact them about using their cold calling tips and opportunities available at their brokerage.

22. Cold calling is referenced throughout KW Arizona Realty's training and through its online Youtube channel.

23. In a video published on Defendant's Youtube channel "KWAZ Agent Spotlight – Mike Paylian," the broker, CEO, and team leader of KW Arizona Realty David Morse interviews Mike Paylian, one of his successful agents to discuss how Paylian achieved his success.[8]

24. In the video, Paylian explains, "… then even the accountability aspect right, is like, ***I know I have to be making cold calls***, like, did I do that today? If I

---

[7] https://kwarizona.com/top-5-cold-calling-tips/
[8] https://www.youtube.com/watch?v=hcf90PHSf64

7

didn't, why? What can I do better and you know, being part of that program, it was very helpful…"[9] (emphasis added)

25.  As a result of this training, KW Arizona Realty agents reference cold calling as part of their job as an agent, including:

[10]

26.  In an Ignite Session produced by Defendant one of their real estate agents recommends "You're going to have hit the phones in a big way and probably even start cold calling, circle prospecting in your neighborhood…get that list and start down that path."[11]

27.  In Defendant's Ignite Session 9: "A Day in the Life of a Real Estate Agent" an agent states "Lead generating for buyers is something that should just happen all day and everyday no matter what…Every time you are circle prospecting around your open house, that's a listing presentation."[12]

---

[9] Id. – 6 minutes, 57 seconds
[10] https://www.linkedin.com/in/valentin-capraru-4270a84/
[11] https://www.youtube.com/watch?v=DqmVmK_3C1E&t=1602s

8

28. As a result of the training provided by KW Arizona Realty, consumers are receiving unsolicited calls and text messages, despite having their phone number's registered on the DNC, as per Plaintiff's experience.

29. Defendant KW Arizona Realty profits from the unlawful telemarketing activities that resulted in the filing of this Complaint.

30. As a result, KW Arizona Realty is vicariously liable for the unlawful telemarketing activities that it directs its real estate agents to engage in to generate business.

31. In response to these calls, Plaintiff Macdonald brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF MACDONALD'S ALLEGATIONS

32. Plaintiff Macdonald is the subscriber and sole user of the cell phone number ending with 5850.

33. Plaintiff Macdonald registered his cell phone number on the DNC on August 27, 2003.

---

[12] https://www.youtube.com/watch?v=MR_bvrrybjA&t=2000s

9

34. Plaintiff Macdonald uses his cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

35. Plaintiff Macdonald's cell phone number is not associated with a business and is not used for business-related purposes.

36. Plaintiff Macdonald pays for the use of his cell phone personally. It is not reimbursed by a business.

37. On January 15, 2025 at 2:24 PM, Plaintiff Macdonald received an unsolicited call to his cell phone from 602-653-8725.

38. When Plaintiff Macdonald answered this call, an agent identified himself as Elija Nunez from KW Arizona Realty.

39. Nunez was calling to offer his assistance in helping Plaintiff Macdonald to sell his property.

40. Plaintiff Macdonald was not looking to sell his property, so he asked Nunez how he obtained Plaintiff's contact information.

41. Nunez said that somebody on his team provided Plaintiff Macdonald's contact information, and then he added that he paid for the lead information.

42. Plaintiff Macdonald told Nunez that his number is registered on the DNC and said that he is not looking to sell his property. He then told Nunez that he doesn't want anybody from KW Arizona Realty calling his phone number.

10

43. Despite the Plaintiff informing him to not contact him again, Nunez then sent the Plaintiff a text message which included his contact card for the purpose of having the Plaintiff possibly doing business with Nunez in the future.

44. Plaintiff Macdonald was not looking to purchase or sell a property.

45. Plaintiff Macdonald has never provided his cell phone number to KW Arizona Realty or any of its real estate agents.

46. The unauthorized solicitation telephone call and text messages that Plaintiff Macdonald received from or on behalf of Defendant KW Arizona Realty have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

47. Seeking redress for these injuries, Plaintiff Macdonald, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

48. Plaintiff Macdonald brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) a KW Arizona Realty affiliated agents called and/or texted more than one time in the aggregate, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4)

11

for substantially the same reason Defendant's agent called and/or texted Plaintiff.

49. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Gomez anticipates the need to amend the Class definition following appropriate discovery.

50. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

12

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls and text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call/text;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff Macdonald will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Macdonald has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Macdonald and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Macdonald nor his counsel have any interest adverse to the Class.

53. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate.

Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Gomez. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Macdonald and the Do Not Call Registry Class)**

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

14

56. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

57. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Macdonald and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

58. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Macdonald and the Do Not Call Registry Class received more than one telephone call and/or text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

59. As a result of Defendant's conduct as alleged herein, Plaintiff Macdonald and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

15

60. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Macdonald requests a jury trial.

**DARREN MACDONALD**, individually and on behalf of all others similarly situated,

16

DATED this 5/20/2025 day of 5/20/2025

By: /s/ Nathan Brown
Nathan Brown (SBN 033482)
BROWN PATENT LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
Nathan.Brown@BrownPatentLaw.com

Rachel E. Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: rachel@kaufmanpa.com

*Attorneys for Plaintiff and the putative Class*

17